FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ MAY 23 2012 ★
BROOKLYN OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RICHARD McLEAN,

                Plaintiff,

-against-

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-4989 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Richard McLean brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the Social Security Administration's ("SSA") decision that he is not disabled and therefore not entitled to supplemental security income ("SSI"). McLean argues that the SSA made three errors in denying his application for benefits: that it (1) failed to properly evaluate the opinion of McLean's treating physician; (2) failed to develop the record regarding McLean's right eye impairment; and (3) failed to properly evaluate McLean's credibility. The Commissioner of Social Security has filed a motion, and McLean has filed a cross-motion, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Commissioner's motion is DENIED, McLean's motion is GRANTED, and this case is REMANDED to the SSA for further proceedings.

I.    **BACKGROUND**

McLean was born on June 10, 1974. (Administrative Record (Docket Entry # 6) ("Rec.") at 17.) He has previously worked as a day camp counselor, cardboard assembler, mailroom clerk, stock loader, and, most recently, pipe threader. (Id. at 56, 75, 209, 215-18.)

1

On October 7, 2003, McLean was feeding pipes into a machine designed to clean the pipes with chemicals. (Id. at 147.) While he was moving from the front of the machine (into which he was feeding the pipes) to the back of the machine (where he would retrieve the pipes), he slipped on a piece of cardboard and fell backwards onto the pavement, hitting his head, right shoulder, right elbow, lower back, right face, and neck. (Id.) As McLean lay on the ground nearly unconscious, the pipes exited the machine and chemicals that had been cleaning the pipes spilled onto his face, injuring his right eye. (Id.)

On May 23, 2007, McLean filed a pro se application for SSI benefits, claiming that he had been disabled since October 7, 2003, due to bilateral arthritis of the hips and knees, a right shoulder impairment, a right eye impairment, a back disorder, and a foot ulcer. (Id. at 23, 25, 38, 50, 55, 72.) He alleged that his impairments prevented him from sitting or standing for long periods of time and from walking long distances, and that he suffered from spasms in his back and waist. (Id. at 55.) The SSA denied his application on January 18, 2008. (Id. at 25-26.)

McLean requested a hearing on his application before an Administrative Law Judge ("ALJ"); ALJ Manuel Cofresi held a hearing on the application on June 16, 2008. (Id. at 212-33.) McLean and his wife, Candice Outlaw, testified at the hearing. (Id.) On July 22, 2008, the ALJ issued a written decision concluding that McLean was not disabled within the meaning of the Social Security Act.[1] (Id. at 10-18.) McLean requested that the SSA Appeals Council review the ALJ's unfavorable decision. (Id. at 6.) The Appeals Council denied McLean's request for review on October 17, 2008 (id. at 3-5), rendering the ALJ's decision the final decision of the Commissioner. See 42 U.S.C. § 405(g).

On December 11, 2008, McLean, now represented by counsel, filed the instant Complaint seeking judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), of the SSA's decision that

---

[1] The details of the evidence presented to the ALJ and the ALJ's decision will be discussed in Part III.

he was not disabled and therefore not entitled to SSI. (Compl. (Docket Entry # 1).) McLean and the Commissioner cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See Def. Mem. (Docket Entry # 19); Pl. Mem. (Docket Entry # 20).)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B. Review of Final Determinations of the Social Security Agency

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19,

3

2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see also Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as long as (1) the ALJ has applied the correct legal standard and (2) its findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

### C. Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4). In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (alterations omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner "to show there is other gainful work in the national economy that the claimant could perform." Id.

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts;

(2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id. That duty is "heightened" when, as here, the claimant appears at the hearing pro se. Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79, 83 (2d Cir. 2009).

## III. DISCUSSION

McLean argues that the ALJ erred in concluding that he was not disabled under the Social Security Act. (Compl. ¶ 11.) He does not dispute the first three steps of the ALJ's five-step analysis: (1) that McLean had "not engaged in substantial gainful activity since May 23, 2007"; (2) that McLean suffered from "a severe combination of impairments, including bilateral arthritis in the hips and knees and a right eye impairment"; and (3) that McLean did not suffer from an impairment that met or exceeded the Listing of Impairments. (Rec. at 12.)

At step four, the ALJ found that McLean had "the residual functional capacity to perform sedentary work" because he could "lift/carry ten pounds; sit for six hours; and stand/walk for two hours in an eight hour workday."[2] (Id. at 12-13.) Based on that residual functional capacity, the ALJ found at step four that McLean was "unable to perform his past relevant work" but, at step

---

[2] The Second Circuit has described "sedentary work" as follows:

> Although sedentary work is the least rigorous of the five categories of work recognized by SSA regulations, by its very nature "sedentary" work requires a person to sit for long periods of time even though standing and walking are occasionally required. According to the SSA, sedentary work generally involves up to *two hours of standing or walking* and *six hours of sitting* in an eight-hour work day. Sedentary work also involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.

Curry, 209 F.3d at 123 (internal quotation marks, alterations, and citations omitted).

6

five, that there were "jobs that exist[ed] in significant numbers in the national economy that [McLean] c[ould] perform." (Id. at 17.) Accordingly, the ALJ concluded that McLean was not disabled within the meaning of the Social Security Act. (Id. at 18.)

McLean argues that the ALJ committed three errors in his determination of McLean's residual functional capacity at step four (and upon which the ALJ premised his unfavorable conclusion at step five). He asserts that the ALJ (1) failed to properly evaluate the opinion of McLean's treating physician; (2) failed to develop the record regarding McLean's right eye impairment; and (3) failed to properly evaluate McLean's credibility. (Pl. Mem. at 3.)

## A. Evaluation of McLean's Treating Physician

McLean argues that the ALJ failed to properly evaluate the opinion of Charlene Andrews, M.D., McLean's treating physician during the relevant period. (Id. at 3.) He is correct.

A "treating physician" is a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual."[3] Sokol v. Astrue, No. 04-CV-6631 (KMK) (LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (internal quotation marks omitted). Under the SSA's regulations, "a treating physician's report is generally given more weight than other reports." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). The SSA's "treating physician rule" requires an ALJ to give a treating physician's opinion "controlling weight" if "the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). On the other hand, "[w]hen other substantial evidence in the record"—such as other medical opinions—"conflicts with the treating physician's opinion, [ ] that opinion will not be deemed controlling." Snell, 177 F.3d at 133.

---

[3] It is undisputed that Dr. Andrews qualifies as a "treating physician" under this definition.

7

And in any case, "some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner" and are therefore never given controlling weight. Id. (internal quotation marks omitted).

Even when an ALJ does not give *controlling* weight to a treating physician's opinion, the ALJ must assess several factors to determine how *much* weight to give the assessment. See 20 C.F.R. § 404.1527(c)(2). Specifically, the ALJ must assess "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c)(2)-(6). While an ALJ need not mechanically recite each of these factors, the ALJ must "appl[y] the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). The court will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" or when the court "encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33.

Dr. Andrews, the treating physician at issue in this case, was an internist at Queens-Long Island Medical Group, P.C. She treated McLean on several occasions in 2006 and 2007 in connection with the injuries he suffered from his accident at work.[4] In a report dated May 25, 2007, two days after McLean's application for SSI benefits, Dr. Andrews indicated that McLean had fallen while working on October 7, 2003, and had injured his lumbar spine, right shoulder, and right eye. (Rec. at 189.) She wrote that McLean was "unable to work [due] to chronic pain" (id.) and that she had prescribed him with Naprosyn (a non-steroidal anti-inflammatory drug

---

[4] Prior to seeing Dr. Andrews, McLean was primarily treated for his injuries by Emmanuel Lambrakis, M.D. (See Rec. at 86-149.)

used to relieve pain and swelling) and Lipoderm (a local anesthetic) (id. at 190). On October 1, 2007, Dr. Andrews reported by telephone to a state agency employee that McLean had neck and lower back pain; that he walked with an antalgic (or abnormally shortened) gait; that his abnormal gait had caused an ulcer in his right foot; that he needed a cane for balance and coordination; that he had problems sitting for more than fifteen-thirty minutes due to lower back pain radiating into his buttocks; that he had to move around while sitting to relieve the pain and discomfort or arise from his chair frequently; and that he was able to sit/stand for less than two hours in a workday. (Id. at 170.) Dr. Andrews opined that McLean did not have the residual functional capacity to perform sedentary work. (Id.) On January 4, 2008, Dr. Andrews wrote that McLean "suffer[ed] from severe low back pain due to injury in the past," that he had "osteoarthritis in the hips and knees," and that he was "totally disabled from work." (Id. at 186.) On June 8, 2008, she wrote that McLean "suffer[ed] from chronic lower back pain since injuring his back years ago" and was "currently disabled from work." (Id. at 205.)

The ALJ found that Dr. Andrews' opinion was "inconsistent with other evidence contained in the record" (id. at 15)—most notably the opinions of examining physician Kevin Wang, M.D., and reviewing physician Neil Novin, M.D.—and concluded (contrary to Dr. Andrews) that McLean had a residual functional capacity for at least sedentary work (see id. at 14-16). In order to determine whether the ALJ properly evaluated Dr. Andrews' opinion, the court must first decide whether that opinion was entitled to controlling weight. See 20 C.F.R. § 404.1527(c)(2). If not, the court must decide whether the ALJ provided "good reasons" for discounting Dr. Andrews' opinion, Halloran, 362 F.3d at 33, based on the factors set forth in the regulations, see 20 C.F.R. § 404.1527(c)(2).

1.  Controlling Weight

Dr. Andrews' opinion was not entitled to controlling weight because it was inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2); Snell, 177 F.3d at 133. As the ALJ noted, the opinions of both Dr. Wang and Dr. Novin were consistent with a residual functional capacity for sedentary work, unlike those of Dr. Andrews. (Rec. at 15-16.)

On August 17, 2007, Dr. Wang conducted an orthopedic consultative examination of McLean. (See id. at 163-67.) Among other things, Dr. Wang reported that McLean "appeared to be in no acute distress"; that he "[n]eeded no help changing for the exam or getting on and off [the] exam table"; that he was "[a]ble to rise from [his] chair without difficulty"; that he had a full range of motion in his shoulders, elbows, forearms, wrists, fingers, hips, knees, and ankles bilaterally; and that his arms had full strength with no muscle atrophy or sensory abnormality. (Id. at 165-66.) Based on his examination, Dr. Wang diagnosed McLean with low back pain and cervical neck pain, and opined that McLean had "moderate limitation[s] for squatting, bending, kneeling, and lifting"; "[m]ild limitation[s] for prolonged standing, prolonged walking, and climbing"; and "[n]o limitation[s] for reaching, sitting, or use of bilateral upper extremities for fine or gross motor activities." (Id. at 167.) Dr. Wang's findings that McLean had no limitations for sitting and only mild limitations for standing contradict Dr. Andrews' opinions that McLean had problems sitting for more than fifteen-thirty minutes and that he was able to sit/stand for less than two hours in a workday. (See id. at 170.)

The opinions of Dr. Novin, a state agency reviewing physician, are also inconsistent with those of Dr. Andrews. On October 30, 2007, Dr. Novin reviewed McLean's medical records and completed a residual functional capacity assessment. (Id. at 173-80.) Dr. Novin opined, among other things, that McLean had the ability to occasionally lift and/or carry up to twenty pounds

and frequently lift and/or carry up to ten pounds; and that he could stand and/or walk at least two hours and sit about six hours in an eight-hour workday. (Id. at 174-76.) When asked to explain the evidence supporting his conclusions, Dr. Novin stated that McLean's right leg weakness was "minor and therefore the requirement for the cane should be temporary as the foot ulcer should respond to treatment and not last 12 months, obviating the need for a cane." (Id. at 176.) As the ALJ found, Dr. Novin's findings are consistent with a residual functional capacity for sedentary work and therefore contradict Dr. Andrews' conclusions. (Id. at 16.)

Because Dr. Andrews' opinions are inconsistent with those of Dr. Wang and Dr. Novin, they were not entitled to controlling weight. See 20 C.F.R. § 404.1527(c)(2).

2. Good Reasons

Thus, the question for the court is whether the ALJ provided "good reasons" for discounting Dr. Andrews' opinions, Halloran, 362 F.3d at 33, based on the factors set forth in the regulations, see 20 C.F.R. § 404.1527(c)(2). Quite simply, the ALJ provided no meaningful reason at all for rejecting the opinions of Dr. Andrews.

Although the ALJ *listed* the conclusions of Dr. Andrews, the ALJ's only statements of *analysis* regarding those opinions were: (1) that "[a]lthough Dr. Andrews opined that the claimant is disabled, . . . a determination of disability is reserved for the Commissioner"; (2) that Dr. Andrews' "opinion is inconsistent with other evidence contained in the record"; and (3) that "[g]reat weight has been given to the opinions of the claimant's treating physicians." (Rec. at 15-16.) The first statement is an uncontroversial proposition of social security law, see Snell, 177 F.3d at 133; the second relates only to the determination of whether Dr. Andrews' opinion is entitled to controlling weight and cannot in itself supply the "good reasons" for discounting that opinion, see Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004) ("It is not enough

11

for the ALJ to simply say that [a treating physician's] findings are inconsistent with the rest of the record. The ALJ [must] provide[] reasons which explain that inconsistency with these other parts."); and the third is belied by the ALJ's actual analysis. The ALJ did not apply a single factor that the regulations provide for determining the weight to give a non-controlling opinion of a treating physician. See 20 C.F.R. § 404.1527(c)(2)-(6); Schaal, 134 F.3d at 503. Nor did the ALJ otherwise explain why he found the opinions of Dr. Wang—who examined McLean one time—and Dr. Novin—who never examined McLean at all—to be more convincing than those of Dr. Andrews.[5] Cf. Pogozelski, 2004 WL 1146059, at *13 (ALJ erred in according "more than limited weight" to opinion of physician who had examined the claimant on only one occasion); Crespo v. Apfel, No. 97-CV-4777 (MGC), 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17, 1999) (noting that a "consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day").

In short, the ALJ provided nothing close to "good reasons" for the lack of weight he gave to Dr. Andrews' opinion. Halloran, 362 F.3d at 33. Unfortunately, because of the ALJ's disturbingly empty analysis and disregard for the treating physician rule, McLean will have to continue to wait for a reasoned decision on his application, as the court must now remand his case for a proper evaluation of Dr. Andrews' opinion.

---

[5] The court also notes that Dr. Andrews' opinions appear to be consistent with those of Dr. Lambrakis, a spinal specialist who treated McLean between October 18, 2003, and October 18, 2005. (See Rec. at 86-149.) On several occasions, Dr. Lambrakis opined that McLean suffered from derangement of his right shoulder and knee, that he had great difficulty walking, and that he was "totally and completely incapacitated for any gainful employment or medically unsupervised activity." (E.g., id. at 126, 132, 146.) Dr. Andrews considered Dr. Lambrakis' opinion in conducting her own evaluations. (Id. at 189.) Cf. Meadors v. Astrue, 370 Fed. App'x 179, 180 (2d Cir. 2010) (noting that "[t]he ALJ was influenced by the fact that [claimant's treating physician was] not a specialist," but that this treating physician "would have had the opportunity to review the clinical findings and opinions of specialists with whom [claimant] did consult"). The ALJ made no mention of the consistency of Dr. Andrews' opinions with those of Dr. Lambrakis. Cf. Sutherland, 322 F. Supp. 2d at 290.

12

### B.  Development of Record Regarding Eye Impairment

McLean argues next that the ALJ did not adequately develop the record regarding his right eye impairment. (Pl. Mem. at 22.) The court disagrees.

McLean contends that, although the ALJ "determined that Mr. McLean suffered from a legally severe impairment of his right eye," the record contains no information "concerning the *severity* of the impairment." (Id. (emphasis added).) Moreover, he argues, despite McLean's testimony that his right eye could not be exposed to bright light, that he had to use eye drops, and that he experienced "spasms" (Rec. at 222), the ALJ's questioning of McLean regarding his eye impairment related only to "whether [McLean] was capable of reading a newspaper or watching television with the use of his glasses," an inquiry that did not permit "a function by function assessment of what he could do in a work environment despite his eye impairment" (Pl. Mem. at 22-23 (citing Rec. at 222)). McLean asserts that, "[h]aving determined that his eye impairment was legally severe, and with no treating information concerning his eye impairment, the ALJ should have re-contacted the treating source and sought specific information regarding his eye impairment and if none was available, ordered a consultative examination." (Id. at 23.)

The court finds no deficiency in the ALJ's development of the record regarding McLean's eye impairment. McLean is incorrect that there was "no treating information concerning his eye impairment." (Id. at 23.) The record contains substantial information—discussed by the ALJ (see Rec. at 13-14)—from Emmanuel Lambrakis, M.D., who examined McLean's eyes on several occasions in 2003 (see, e.g., id. at 86 (reporting that McLean "lost [a] significant portion of his eyesight in [his right] eye")). Moreover, contrary to McLean's suggestion (see Pl. Mem. at 23), he *was* given a consultative examination that included a checkup of his eyes. In August 2007, Dr. Wang conducted such an examination and reported

13

that McLean's corrected vision was 20/25. (Rec. at 165). Dr. Novin also noted that McLean did not have any significant visual limitations. (Id. at 176.)

To the extent that there is limited information in the record from after 2003 concerning the severity of McLean's eye impairment, that appears to be due to McLean's failure to seek *treatment* for his eye impairment since that time. Dr. Andrews' records, for example, do not indicate that McLean ever complained of any eye problems in 2007 and 2008. (See, e.g., id. at 170, 186, 189-90, 205.) And given McLean's failure to seek treatment, his brief statements to the ALJ that he could not "be under a big, big light," that he needed eye drops, and that he "g[o]t spasms" (id. at 222), would not have reasonably suggested to the ALJ that McLean's eye impairment was severe enough to impair his ability to work even with the benefit of corrective lenses. Thus, the ALJ had no obligation to inquire further.

### C. Evaluation of McLean's Credibility

Finally, McLean argues that the ALJ failed to properly evaluate McLean's subjective accounts of his pain and symptoms. (Pl. Mem. at 23-25.) The ALJ's determination that McLean's allegations were inconsistent with the medical evidence (see Rec. at 16) was tainted by the ALJ's failure to properly evaluate the opinions of McLean's treating physician (see Part III.A, supra)—a failure that would naturally have affected how the ALJ viewed the totality of the medical evidence. On remand, the ALJ is directed to consider McLean's subjective complaints in light of the ALJ's fresh evaluation of Dr. Andrews' opinions. See Sutherland, 322 F. Supp. 2d at 291 (because the ALJ's failure to properly apply the treating physician rule "affect[ed] consideration of the ALJ's treatment of the plaintiff's subjective complaints," the court would "not now consider" plaintiff's argument that the ALJ did not properly consider her complaints).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is DENIED, Plaintiff's cross-motion for judgment on the pleadings is GRANTED, and this case is REMANDED to the Commissioner for a proper evaluation of the opinions of Dr. Andrews and a reevaluation of McLean's subjective complaints in light of all the medical evidence.[6]

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York  
May 23, 2012

NICHOLAS G. GARAUFIS  
United States District Judge

---

[6] McLean does not ask the court to remand his case for calculation of benefits. (See Pl. Mem. at 25.) See generally Balsamo v. Chater, 142 F.3d 75, 82 (2d Cir. 1998) (where the ALJ commits legal error, the court may either "(1) remand[] for reconsideration by the Commissioner upon the existing record or upon a record to be amplified, or (2) remand for calculation of benefits"). In any event, the court does not find that there is unequivocal evidence of disability or that further findings would be unhelpful to assure proper disposition of McLean's claim; thus, a remand for further proceedings is proper. See Pokorny v. Astrue, No. 09-CV-1694 (NGG) (JO), 2010 WL 5173593, at *5 (E.D.N.Y. Dec. 14, 2010); Pogozelski, 2004 WL 1146059, at *20.